RAMIREZ, J.
Rosa Elena Torrealba appeals her judgment of conviction and sentence for sexual battery with great force and kidnapping, and the trial court’s denial of her motion for judgment of acquittal. We affirm because there is sufficient evidence to support the jury’s verdict when the evidence is viewed in the light most favorable to the appellee State of Florida.
The evidence at trial established that soon after they first met Torrealba developed a sexual relationship with an individual hereinafter referred to as “J.L.,” the victim in this case. Torrealba later told J.L. that she had an ex-boyfriend, Franz Rigg, with whom she had a current sexual relationship and that Rigg knew of her newly developed sexual activities with J.L.
Thereafter Torrealba invited J.L. over to her apartment and, prior to their scheduled meeting, she told J.L. that “Steve,” her homosexual roommate, would be there. “Steve,” however, was actually Rigg, whom J.L. had never met. At the apartment, she encouraged J.L. to drink a total of three alcoholic drinks. The drinks made J.L. a little lightheaded, hyper and weird, and caused him to become very talkative. He noticed that everything looked more intense and he experienced a totally different feeling.
Torrealba told J.L. that “Steve” was in the apartment getting ready for a party. She went into “Steve’s” room where she remained for about ten minutes. She then *471 introduced Rigg to J.L. as Steve. When Rigg said that he was leaving, J.L. approached him to say goodbye and shake his hand. At that point, Rigg attacked him, smashing J.L.’s head onto the floor and walls, and telling J.L. that “this is what you get for having sex with girls on the first date” and “what kind of a man are you having sex with girls on the first date?” Rigg also told J.L. that he was going to “lose control of [his] body in about 15 minutes” and that, if J.L. resisted, he would break J.L.’s neck. Rigg also told J.L. that he had a “large dildo” and that “we are going to put it in you, and we are going to put it on the internet.”
J.L. immediately felt a prick on his neck and then became paralyzed and dropped to the floor. He also felt like he was being dragged, then felt a painful pushing, thrusting sensation in his rectum. When he awoke, he found himself leaning against a bed with his pants down to his ankles. J.L. was in pain and bleeding from the rectum. He recalled that Rigg and Torre-alba were in front of him and they were talking to each other. During her conversation with Rigg, Torrealba asked whether J.L. could still get into law school.
Once outside of the apartment, J.L. asked Torrealba why she had set him up. She then appeared really nervous and scared, and she told J.L. that he was just having a bad trip and returned to her apartment.
J.L. was later treated at a rape treatment center and reported the incident to the police. Torrealba thereafter called J.L. and told him that she had retained a lawyer and she wanted to know what his intentions were. Torrealba later asked Rigg where she could locate a steam cleaner.
In addition to J.L., the State presented several witnesses, including H. Chip Walls, the Technical Director of the Forensic Toxicology Laboratory at the University of Miami School of Medicine, who conducted a blood and urine exam upon J.L. two days after J.L.’s attack. Walls testified that J.L’s urine toxicology exam revealed the presence of Ketamine, as well as its metabolites. Walls further testified that Keta-mine is an anesthetic drug used for its ability to produce a sedated state by decreasing brain activity and blocking the body’s pain mechanism. Metabolites are the breakdown products of a particular drug or chemical. At the close of the State’s case, the defense moved for a judgment of acquittal, and the trial court denied the motion. Torrealba did not testify at her trial nor did any witnesses testify on her behalf. The jury subsequently found Torrealba guilty.
On review of the denial of a motion for judgment of acquittal, an appellate court must view any evidentiary conflicts in the light most favorable to the State. See Woods v. State, 733 So.2d 980, 985 (Fla.1999). If there is competent, substantial evidence to support a jury’s verdict, the verdict will not be overturned on appeal. Id.
Torrealba argues that there is no direct evidence that she participated in the sexual battery or kidnaping; knew that Rigg intended to commit a sexual battery and a kidnaping; or that she intended to assist Rigg in the commission of any such crimes. We find, however, that the evidence adduced at trial in this case is sufficient to support the conviction when the evidence is viewed in the light most favorable to the State.
The jury could have reasonably concluded that Torrealba knowingly and intentionally participated in the charged crimes based upon J.L.’s testimony about her behavior before and after the incident, all of which reflected a consciousness of guilt on *472 her part. See A.B.G. v. State, 586 So.2d 445, 447 (Fla. 1st DCA 1991) (evidence concerning the juvenile’s actions both before and after his companions stole condoms from store, was sufficient to support the order adjudicating the juvenile delinquent for offense of petit theft as an aider and abettor).
Torrealba invited J.L. to her apartment and twice confirmed telephonically their scheduled meeting. She offered J.L. alcoholic drinks that helped impair him, and actually encouraged him to drink. She lied to J.L. about Rigg’s true identity, and more'significantly, she withheld telling him that Rigg would be at the apartment on his visit while knowing that Rigg was well aware of her relationship with J.L.' and that Rigg did not approve of that relationship. During her conversation with Rigg following the incident, she asked about J.L.’s ability to get into law school. When J.L. later confronted her and asked her why she had set him up, she appeared anxious and restless, and did not deny that she had set him up. At no time did Torre-alba appear at all to be concerned with J.L.’s well-being nor did she contact the authorities during or following the attack on J.L., despite her presence at the apartment at the time of the attack and when J.L. awoke; despite the nature of the crimes; and despite the extent of J.L.’s injuries which included blood loss: J.L.’s urine exam also revealed traces of the Ketamine illegal substance'to which use J.L. did not consent.
All of these facts, when viewed in the aggregate, demonstrate a consciousness of guilt on Torrealba’s part. They provided the jury with a reasonable basis to conclude that Torrealba knew of Rigg’s intentions with regards to J.L. and intended to participate in the charged crimes, and thus support the jury’s finding of guilt. The trial court therefore properly denied Tor-realba’s motion for judgment of acquittal. See Lynch v. State, 293 So.2d 44, 45 (Fla.1974) (holding that motions for judgment of acquittal should only be granted when it is apparent that no legally sufficient evidence has been submitted from which a jury could find a verdict of guilty).
Affirmed.